UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAHQUEL PRINGLE,<br><br>   Defendant. | Criminal No. 22-cr-10157-FDS |

## GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Jahquel Pringle personally traveled from Boston to Alabama on a commercial bus, obtained firearms there, and then transported the firearms hidden in his luggage on the commercial bus back to Boston. He did so in furtherance of a conspiracy with at least three co-conspirators. Over the course of one year, and mostly during the global pandemic, the co-conspirators brought approximately two dozen firearms from Alabama into Boston for distribution to individuals who could not lawfully possess firearms and who, in several cases, used those firearms in shootings. Moreover, in doing all of this, the defendant also violated federal law prohibiting him from possessing firearms as a felon. For the defendant's actions, the government respectfully requests that this Court impose a 48-month sentence of imprisonment, along with three years of supervised release and the mandatory special assessment of $500.

## FACTS

The government relies on and incorporates the facts as set forth in the statement of offense conduct in paragraphs 9 through 21 of the Presentence Investigation Report ("PSR"). In summary, at some point between January 2, 2020 and May 27, 2021, the defendant Jahquel Pringle, also known as "Kur," willfully entered into an agreement with Jamori Brown, Kobe

Smith, and Brandon Moore, as well as others, to obtain no fewer than twenty-four firearms from Alabama, where Moore lived, and transport them to Massachusetts, where Pringle, Brown, and Smith lived, for their use and for distribution to their associates. Neither Brown, nor Moore, Pringle, or Smith, was a licensed importer, manufacturer, dealer, or collector of firearms. Moreover, Moore and Pringle were felons who were not permitted to possess firearms, and none of the defendants had a Massachusetts firearm identification card permitting them to possess firearms in Massachusetts. PSR ¶¶ 9-11.

**Overview of Conspiracy**

As part of the conspiracy, Pringle and Smith placed orders for firearms with Moore, after which Moore purchased or otherwise obtained firearms in Alabama.  Pringle and Smith arranged for the transport of the firearms from Alabama to Boston.  Pringle and Brown physically transported the firearms from Alabama to Boston by hiding the firearms in their luggage and proceeded to travel on commercial buses. Pringle made one trip to transport the guns in July 2020, and Pringle and Brown made a second trip to transport additional guns in August 2020. PSR ¶ 12.  Altogether, the co-conspirators brought at least 24 firearms obtained in Alabama to Massachusetts.  PSR ¶ 14. The co-conspirators kept some of the firearms for themselves as well as distributed them to their associates in and around Boston. PSR ¶ 15.

**Pringle's Substantive Crimes and Acts in Furtherance of Conspiracy**

Sometime between January 3 and January 6, 2020, Moore and Pringle communicated about a firearm that Moore was obtaining for Pringle. On or around January 8, 2020, Moore proceeded to travel to Boston and provided Pringle a firearm that Moore had obtained in Alabama in exchange for cash and marijuana. PSR ¶ 13(a).

On July 3, 2020, Pringle messaged Moore to call him. On July 4, 2020, following communication with Moore regarding the procurance of firearms, Pringle bought a bus ticket for himself to travel from Boston, MA to Montgomery, AL on or around July 5-6, 2020. Pringle completed this trip, as verified by bus and motel records as well as historical cell site information regarding Pringle's phone. PSR ¶ 13(b).

On July 14, 2020, Moore caused an individual to buy seven firearms for him at gun stores in Alabama. The next day, on July 15, 2020, Pringle boarded a bus in Alabama while in possession of approximately 12-13 firearms that Moore had obtained for him in Alabama[1] and traveled to Boston, ultimately arriving on or around July 17. PSR ¶ 13(b).

In late July and early August 2020, Moore communicated with Smith and Pringle regarding additional firearms that he had available or could procure for them. Moore sent both Pringle and Smith photographs of said firearms. On or around July 30, 2020, Moore caused an individual to purchase three firearms for him at a gun store in Alabama. PSR ¶ 13(c)-(d).

On or around August 6, 2020, Pringle purchased commercial bus tickets for him and Brown to travel from Boston, MA to Montgomery, AL on or around August 10, 2020. Pringle and Brown used said tickets to make the trip as scheduled. PSR ¶13(e).

---

[1] Of those firearms, seven of them were specifically identified in paragraph 21 of the indictment.

Once in Alabama, on or around August 13, 2020, Pringle fired some of the firearms that Moore had obtained for him and Brown in Alabama, including an assault rifle loaded with what appears to have been a large-capacity magazine. This incident was captured on video. PSR ¶ 13(f).

On or around August 17, 2020, Pringle and Brown boarded a commercial bus in Montgomery, AL while in possession of approximately 12 to 15 firearms that Moore had obtained for them in Alabama.[2]  Pringle and Brown then traveled to Boston with the firearms hidden in their luggage and ultimately arriving in Boston on or around August 19, 2020. This is verified by historical cell site location records showing Brown's phone traveling from Boston to Alabama between August 10 and 12, 2020 and then returning from Alabama to Boston between August 17 and 19, 2020. PSR ¶13(g).

On August 22, 2020, Moore messaged Pringle: "u gd u dnt want nomore right."  That same day, Moore sent Brown a photo of a large-capacity magazine accompanied by the following message: ""… i jus put 120 rounds in dat drum." Moore also added: "n jus put 35 in da 32 round jump" and "im bout to c if they drive smooth." Brown responded: "Ight bet lmk." PSR ¶13(i).

On August 24, 2020, Moore sent Pringle the following message: "guess u dnt want dat clip." Moore also sent both Pringle and Smith a photo of two firearms and large-capacity magazines. Less than a year later, on January 25, 2021, Pringle sent Moore a message asking, "Can I place a pre-order for like 3-4?  I'll send $$ for Em." PSR ¶13(j)-(k).

On December 13, 2020, Boston Police arrested Brown for possession of a loaded Smith

---

[2] Of those firearms, three firearms were specifically identified in paragraph 23 of the indictment.

and Wesson Model 40, .40 caliber firearm, which had been purchased by Moore's straw purchaser on July 14, 2020 at The Sportsmans Headquarters in Alabama; it had been transported to Boston by Pringle. Police had initially responded to a call of a male matching Brown's description in possession of a gun. Police located Brown at the specified location – the firearm was found in the backyard of the residence with a laser sight attached. Brown was later identified by a witness as the individual who had been seen with the gun in his hand. PSR ¶ 20.

Pringle had previously been convicted of a crime punishable by a term of imprisonment exceeding one year at the time he brought the firearms from Alabama to Boston and had knowledge of that conviction. Specifically in 2016, Pringle was convicted in the Dorchester Division of the Boston Municipal Court of possession of a firearm without a permit and sentenced to 18 months in the House of Correction. PSR ¶ 21.

## DISCUSSION

### I. Sentencing Guideline Calculation

Probation has calculated defendant's total offense level as 25; the government agrees with this calculation. Probation has calculated the defendant's criminal history category as II; the government agrees with this calculation. Based on its calculations of a total offense level of 25 and criminal history category as II, Probation has calculated a guideline sentencing range ("GSR") in this case to include a term of incarceration from 63 to 78 months, to be followed by a term of supervised release of three years, and a special assessment of $500. PSR at 22. The government agrees with this calculation.

### II. Plea Agreement

The parties entered into a "C" plea agreement, in which the defendant agreed to plead guilty to Counts One through Five of the indictment, and the parties agreed to a sentence within the range

of 36 to 48 months in prison followed by a term of three years of supervised release, as well as the $500 special assessment. Dkt. No. 140.

### III. <u>Application of the Section 3553(a) Factors</u>

The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in § 3553(a)(2). These factors include: the nature and circumstances of the offenses and the history and characteristics of the defendant; the need for the sentence imposed to satisfy the statutory purposes of sentencing; the kinds of sentences available; the applicable guidelines; pertinent Sentencing Commission policy statements; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution. In this case, these factors point to a sentence of imprisonment of 48 months and three years of supervised release.

### A. <u>Nature and Circumstances of the Offense; Need for Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment and Deterrence, and Protect the Public</u>

The nature of the offense is quite serious. Pringle has pleaded guilty to one count of Conspiracy to Commit Illegal Transportation or Receipt in State of Residency of Firearm Purchased or Acquired Outside of State of Residency in violation of 18 U.S.C. § 371; two counts of Illegal Transportation or Receipt in State of Residency of Firearm Purchased or Acquired Outside of State of Resident in violation of 18 U.S.C. § 922(a)(3); and two counts of Felon in Possession of Firearm in violation of 18 U.S.C. § 922(g)(1).

Pringle has admitted to participating in a conspiracy that obtained no fewer than twenty-four firearms from Alabama and transported them to Massachusetts. **Because of the conduct by the defendant and his co-conspirators, dozens of firearms have been illegally distributed on**

**the streets of Boston and surrounding communities.** At least seven of the firearms purchased by Moore's straw purchaser in Alabama in 2020 and then provided by Moore to Pringle and/or Brown have been recovered in and around Boston. PSR ¶ 16. On July 17, 2020 – the same day Pringle arrived in Boston from Alabama – one of the firearms Moore's straw purchaser obtained in Alabama on July 14, 2020 was recovered in Boston at the scene of a shooting. PSR ¶ 18. All three of the firearms purchased by Moore's straw purchaser in Alabama on July 30, 2020 and transported to Boston by Pringle and Brown in August of that year have been recovered in Boston thus far – one on November 13, 2020 in the possession of a then-juvenile suspected of being involved in a shots-fired incident that day and the other two on December 17, 2020 in the possession of individuals observed fleeing the area of a ShotSpotter activation. The two firearms recovered in December 2020 were loaded with large capacity magazines at the time. PSR ¶ 19.

At least two of the individuals from whom the firearms provided by Moore were recovered from were considered to be active members of the Creston Street gang by Boston Police at the time; likewise, Pringle was also considered to be a Creston Street associate by Boston Police at least as of January 2019. At least three of the individuals from whom these firearms were recovered were felons with prior unlawful firearm possession convictions. PSR ¶ 17.

The scourge of gun violence in Boston is well-documented. Between January 1 and December 31, 2020 (the year in which Pringle bought guns in Alabama and brought them back to Boston), Boston recorded 44 fatal shootings and 230 non-fatal shootings. *See* https://static1.squarespace.com/static/5086f19ce4b0ad16ff15598d/t/61d7308e3e9b031b58d8bc5c/1641492622410/Pages+from+Weekly+Crime+Overview_+2021+Year+End-2.pdf (last accessed July 5, 2023). The people hurt and killed in these shootings include people who

voluntarily engage in criminal conduct in the city as well as innocent bystanders caught in the middle, and the harm from these shootings extends to the entire community that loses its sense of safety. Any sentence in a case such as this must take into account the harms that the proliferation of illegal firearms and their delivery to individuals not permitted to possess them causes to the community, and the danger that the unrecovered firearms from this particular crime pose to the community right now.

A significant sentence of incarceration is the necessary and appropriate sentence in this case to reflect the seriousness of these offenses, to promote respect for the law, to adequately punish the defendant for his criminal conduct, to deter him and others from offending in the same way again, and to protect the public.

### B. The History and Characteristics of the Defendant

The government acknowledges certain sympathetic points that are reflected in the PSR, including the defendant's young age at the time the conspiracy commenced (22 years old) and that the defendant experienced several traumatic events as a child and, likely relatedly, has had some mental health struggles for which he laudably has sought help. *See* PSR ¶¶ 47-48, 58-60. The government acknowledges and respects the defendant's plan to start over in a new place, far away from the places and peers that have contributed to his poor choices in the past, and acknowledges that he had obtained stable and respectable employment in Washington state prior to his arrest in this case. PSR ¶ 52. The government appreciates the defendant's desire to be a good father to his son, and is cognizant of and seeks to limit the harm suffered by his son by virtue of being separated from the defendant while he serves his prison sentence.

The government also acknowledges that the defendant has made some positive choices while in pretrial detention, including participating in programming and mental health treatment.

PSR ¶ 60. The government has considered these factors in recommending an appropriate sentence.

However, the government must also consider the defendant's prior record, including his previous conviction of unlawful possession of a firearm, for which he received an 18-month sentence (PSR ¶ 40), and his role here in funneling the firearms into the hands of individuals who could not legally possess them and, at least in a couple of known occasions, engaged in violent crime with them. The whereabouts of more than half of these firearms are still unknown, and thus the harm from these very serious crimes is ongoing.

In light of all of these factors, a sentence of 48 months imprisonment, with three years of supervised release, is sufficient, but not greater than necessary, to accomplish the goals of sentencing set forth in § 3553(a).

### C. Avoiding Unwarranted Sentencing Disparities

The government's recommended sentence is not vastly disproportionate with national sentences for similar crimes by defendants with similar criminal history, although it is 15 months lower than the low-end of the GSR and 11-12 months lower than the average due to the government's consideration of the mitigating factors described above as well as its efforts to recommend a sentence that is proportionate to the defendant's relative culpability in the conspiracy and the sentences received by the defendant's co-conspirators in this case. JSIN data submitted by Probation demonstrates that over the last five fiscal years, there were 133 defendants whose primary guidelines was § 2K2.1 with a final offense level of 25 and criminal history category II, after excluding defendants who received a §5K1.1 substantial assistance departure; for the 127 defendants who received a sentence of imprisonment in whole or in part,

the average length of imprisonment imposed was 59 months and the median was 60 months. PSR at ¶ 91.

The government's recommended sentence of 48 months, while lower than the JSIN data average, is proportionate to the sentences received by Pringle's co-conspirators in this District and his role in the conspiracy. Pringle was involved in all aspects of the conspiracy, from ordering the firearms, to personally traveling to Alabama to pick them up, hiding them in luggage on a commercial bus, and delivering them to the end users in the Boston area. He was convicted of five charges, including the conspiracy charge, two substantive illegal transportation of firearm charges, and two felon in possession charges.

- The role of Pringle's co-defendant Jarmori Brown was much more limited. Brown had just turned 18 years old in June 2020, just before the trips to Alabama, and was the youngest of the co-conspirators. Brown was involved in only one of the two trips. He pleaded guilty to the conspiracy charge and one substantive illegal transportation of firearms charge. The government recommended 27 months in prison for Brown, reflecting the low-end of the GSR; the Court noted that this was a fair and appropriate recommendation. *See* Dkt. No. 120 (Transcript of Brown Sentencing Hearing). Ultimately the Court sentenced Brown to 18 months in prison. The court expressed concern regarding possible over-incarceration given that Brown also had state sentences pending at the time of his sentencing hearing in which he was expected to receive a sentence of at least 30 months[3]; because he had been in state custody throughout the

---

[3] Brown did, in fact, ultimately receive a 30-month sentence in the state. *See Commonwealth v. Jarmori Brown,* 2284CR00215 (30-month sentence imposed on attempted A&B with a firearm charge); *Commonwealth v. Jarmori Brown,* 2284CR00071 (30 month concurrent sentence imposed on accessory after the fact charge); *Commonwealth v. Jarmori Brown,* 2184CR00750 (30 month concurrent sentence imposed on carrying firearm without

federal prosecution, he would not receive any credit off his federal sentence. *Id*. Ultimately, although the Court expressed its reservations in imposing a shorter sentence in light of the gravity of the firearm trafficking offenses, it ultimately sentenced Brown to 18 months. *See id*. Accordingly, his combined state and federal sentence for the various gun-related charges he had pending at the time (including an unlawful possession charge for possessing one of the firearms that the Massachusetts co-conspirators had obtained from Moore) was 48 months. It is appropriate that Pringle, who was more culpable in the conspiracy than Brown (but who was not charged with additional state offenses as Brown was) should receive a sentence in line with Brown's.

- Kobe Smith played an important role in introducing Brandon Moore to the co-conspirators, ordering guns from him, and making arrangements for co-conspirators to pick them up. Probation has not yet disclosed its final PSR re: Kobe Smith; if he is assigned the same enhancements that applied to Pringle and Brown, his GSR will be 24-30 months, and the government intends to recommend a sentence of 24 months.[4] Smith was also very young at the commencement of the conspiracy (20 years old) and has no prior criminal convictions. Given that Smith stands convicted of only the conspiracy, whereas Pringle is convicted of five separate charges including the substantive unlawful transportation of firearms and being a felon in possession of firearms, it is appropriate that Pringle's sentence is higher than Smith's.

---

license).

[4] The parties have disagreed about the applicability of these enhancements in Smith's case. Probation has not yet released its Final Disclosure of Smith's PSR, so which enhancements it will apply has not yet been decided finally, to the best of the government's knowledge.

11

A sentence of 48 months thus properly reflects Pringle's relative culpability within the conspiracy and the sentences that other co-conspirators have received, while also weighing the Guidelines and the JSIN data. Accordingly, the government's recommendation of 48 months, while lower than the JSIN data, is consistent with the §3553(a) goal of avoiding unwarranted sentencing disparities with co-conspirators and properly reflects the defendant's relative culpability.

## CONCLUSION

For the foregoing reasons, and those to be articulated at the sentencing hearing, the government respectfully recommends that this Court impose a sentence of 48 months imprisonment, to be followed by a term of supervised release of three years; and the mandatory special assessment of $500. Such a sentence would be sufficient, but not greater than necessary, to reflect the seriousness of the offense and the goals of sentencing.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By:  /s/ Elianna J. Nuzum
Elianna J. Nuzum
Assistant United States Attorney
John Joseph Moakley U.S. Courthouse
One Courthouse Way, Suite 9200
Boston, MA 02210
elianna.nuzum@usdoj.gov
617.748.3100

May 31, 2024

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Elianna J. Nuzum
Elianna J. Nuzum
Assistant U.S. Attorney

May 31, 2024